**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

WILLA DeMASI, individually and on
behalf of all others similarly situated,

                         Plaintiff,

      v.

EMORY UNIVERSITY,

                        Defendant.

No.

<u>JURY TRIAL DEMANDED</u>

<u>**CLASS ACTION COMPLAINT**</u>

# TABLE OF CONTENTS

**Page**

I.    NATURE OF ACTION ................................................................1

II.    JURISDICTION AND VENUE .....................................................3

III.    PARTIES ...................................................................................4

IV.    FACTS ......................................................................................7

    A.    Background. ...................................................................7

    B.    The Novel Coronavirus Shutdowns and Defendant's Campus Closure...................................................................11

    C.    Defendant's Refusal to Issue Refunds for Tuition or Instructional Fees...................................................................19

V.    CLASS ACTION ALLEGATIONS..............................................21

VI.    CAUSES OF ACTION..............................................................26

    COUNT I BREACH OF CONTRACT .........................................26

    COUNT II UNJUST ENRICHMENT...........................................28

    COUNT III MONEY HAD AND RECEIVED ...............................29

PRAYER FOR RELIEF ...................................................................30

JURY DEMAND ...........................................................................31

Plaintiff, WILLA DeMASI, individually and on behalf of all others similarly situated, for her Class Action Complaint against Defendant EMORY UNIVERSITY ("Emory"), based upon personal knowledge as to her own actions and based upon the investigation of counsel regarding all other matters, complains as follows:

## I.    NATURE OF ACTION

1.    This Class Action Complaint comes during a time of hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19.[1] Social distancing, shelter-in-place orders, and efforts to 'flatten the curve' prompted colleges and universities across the country to shut down their campuses, evict students from campus residence halls, and switch to online "distance" learning.

2.    Despite sending students home and closing its campuses, Defendant continues to charge for tuition, fees, and/or room and board as if nothing has changed, continuing to reap the financial benefit of millions of dollars from students. Defendant does so despite students' complete inability to continue school as normal, occupy campus buildings and dormitories, or avail themselves of school

---

[1] Plaintiff and Plaintiff's counsel are mindful of the severe impact of the coronavirus on all aspects of society. To minimize the burden on the Court, and to reasonably accommodate Defendant, Plaintiff will work with Defendant to reach an agreeable schedule for Emory's response to this Class Action Complaint.

programs and events. So while students enrolled and paid Defendant for a comprehensive academic experience, Defendant instead offers Plaintiff and the Class Members something far less: a limited online experience presented by Google or Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to study. Plaintiff and the Class Members did not bargain for such an experience.

3.      While some colleges and universities have promised appropriate and/or proportional refunds, Defendant has only offered wholly inadequate *de minimi*s refunds and has not acted fairly, equitably, and as required by the law. And, for some students and families, Defendant does so based on outdated financial aid equations and collections, without taking into account disruptions to family income, a particular concern now when layoffs and furloughs are at record levels.

4.      As a result, Defendant's actions have financially damaged Plaintiff and the Class Members. Plaintiff brings this action because Plaintiff and the Class Members did not receive the full value of the services for which they paid and did not receive the benefits of in-person instruction. They have lost the benefit of their bargain and/or suffered out-of-pocket loss and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

## II.    JURISDICTION AND VENUE

5.    This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual Class members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Plaintiff is a citizen of Massachusetts, whereas Defendant is a citizen of Georgia for purposes of diversity. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiff alleges that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Georgia, where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).[2]

---

[2] Approximately 17.9% of students attending Emory University come from within Georgia. https://www.collegefactual.com/colleges/emory-university/student-life/diversity/.

6.      Venue is appropriate in this District because Defendant is located within the Northern District of Georgia. And, on information and belief, events and transactions causing the claims herein, including Defendant's decision-making regarding its refund policy challenged in this lawsuit, have occurred within this judicial district.

### III.   PARTIES

7.      Plaintiff Willa DeMasi is a citizen and resident of the State of Massachusetts. Plaintiff was enrolled as a full-time student for the Spring 2020 academic term at Defendant, completing the term. Plaintiff is in good financial standing at Defendant, having paid in whole or in combination all tuition, fees, costs, and/or room and board charges assessed and demanded by Defendant for the Spring 2020 term. Plaintiff paid Defendant for opportunities and services that she did not receive, including on-campus education, facilities, services, and activities.

8.      In matriculating at Emory University, Plaintiff, like other students, enrolled at Defendant for in-person classes to obtain a hands-on educational experience, avail herself of top academic instruction, and directly interact with faculty and classmates to increase her knowledge. On top of this, Plaintiff enrolled at Defendant's to obtain not only the many benefits of Emory University as a whole but also the small-school, small class size environment promoted by

Defendant. In such an environment, Defendant was supposed to provide an engaging and personal educational experience, with direct interaction with faculty and classmates, along with greater leadership and participatory opportunities in student activities, all in a tight-knit community setting.

9.      While Plaintiff was on spring break, Defendant announced the closure of its campus, forcing Plaintiff to return early to campus to obtain her belongings.

10.     Following the closure of Defendant's campuses and the shift to online only education, Plaintiff suffered a direct loss and did not receive her bargained for academic experience.

11.     Whereas Plaintiff could previously connect with her professors and classmates, Plaintiff's lecture-based classes immediately decreased in quality. Some of Plaintiff's lectures went from in-person sessions to pre-recorded, asynchronous lectures, or a mix thereof. With such shifts, real opportunities for her professors to adapt the lecture to facilitate student understanding were lost. Pre-planned assignments that were part of Plaintiff's coursework and which required interactions with her classmates were cancelled with the shift to online learning. And opportunities to interact with her professors before, during, and/or after classes ended or was restricted to pre-scheduled, email-arranged meetings.

12.     Though Plaintiff was also involved in a variety of student activities, such activities completely ceased or suffered due to the remote nature of the activities. Some of Plaintiff's activities completely ended, while others that ordinarily met weekly were relegated to a mere handful of Zoom meetings spread out over the course of the remaining term.

13.     Moreover, with Defendant's campus closure, Defendant affirmatively barred Plaintiff and other Class Members from accessing university facilities or amenities. Thus, Plaintiff could no longer utilize Defendant's dining halls, transportation shuttling students across Defendant's campuses, group study spaces, and/or athletic and training facilities. And with the loss of access to Defendant's library system, Plaintiff could no longer source important library materials that were only available in person, nor could she draw upon the experience of the research librarians.

14.     And while Defendant has offered some refunds, it has done so only partially. While Plaintiff vacated campus at Defendant's direction on March 17, 2020, Defendant limits its refunds to a prorated period starting March 23, 2020. And Plaintiff's balance of dining dollars were refunded at a 40% basis.

15.     Defendant Emory University is a private institution of higher learning with campuses in Atlanta, Georgia, Oxford, Georgia, and other locations in the

metropolitan Atlanta area. Defendant provides Class Members with campus facilities, in-person classes, as well as a variety of other facilities for which Defendant charges Plaintiff and the Class Members.

## IV.   FACTS

**A.   Background**

16.     Founded in 1836, Emory University has a current enrollment of approximately 15,451 students, across 11 schools and colleges, in over 70+ undergraduate programs and 40+ PhD programs.

17.     As of August 31, 2019, Emory's endowment totaled $7.87 billion and the university ended the fiscal year with assets totaling more than $15.024 billion. In that same year, Defendant collected $452 million in tuition and fees (net of scholarship allowance)—a $18 million increase from the year before—with Defendant's total operating revenues totaling $6.336 billion, exceeding operating expenses by $17.705 million.

18.     In 2013, Emory wrapped up its most recent university-wide major fundraising campaign, announcing that it had raised more than $1.69 billion through Campaign Emory, the culmination of a seven-year fundraising effort, the largest in school history.

19.    While many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value (e.g., Western Governors University, Southern New Hampshire University, University of Phoenix-Arizona), Defendant is not such a school.

20.    Rather, a significant focus of Defendant's efforts to obtain and recruit students pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and renowned faculty and staff.

21.    A few examples of such efforts to promote that experience follow.

22.    Defendant offers undergraduate students with two points of entry, Emory College or Oxford College. "Emory College in Atlanta offers a rigorous liberal arts experience in a research university setting. Professors are the leading scholars in their fields, and learning is enriched by research, internships, and a community of bright, involved students."[3] Indeed, Defendant notes that "You'll find a powerhouse of great programs across Emory, as well as teachers and courses that will challenge and inspire you. It's the liberal arts paired with discovery, where you'll use questions, analysis, evidence, and experience to learn."[4] And "[a]t Emory College, two-thirds of students live on campus, and all students are required

---

[3] http://www.emory.edu/home/admission/index.html.

[4] https://apply.emory.edu/academics/index.html.

to live on campus for their first two years, making the community close, connected, and active. Before you know it, our friendly campus will feel like home."[5]

23.     Likewise "on Emory's original campus, Oxford College offers a rigorous, liberal arts experience on a close-knit campus of first-and second-year students. Professors are dedicated to novel ways of teaching, and students can take advantage of early leadership opportunities."[6] As Defendant notes: "On our picture-perfect small campus, you'll enjoy the close attention of outstanding faculty committed to innovative teaching, foster warm relationships with your classmates, and develop as a leader inside and outside the classroom."[7] Indeed, "[a]t Oxford, you can step up to leadership roles as soon as you arrive. Whether it's service, taking the lead in an arts performance, or starting for a varsity team, it all comes together to make your time here instructive and fun."[8] Moreover, the residential experience is vitally important: "Oxford is a residential college consisting of only first- and second-year students, and students are required to live on campus. Your

---

[5] https://apply.emory.edu/community/emory-college/index.html.

[6] http://www.emory.edu/home/admission/index.html.

[7] https://oxford.emory.edu/admission/index.html.

[8] https://apply.emory.edu/community/oxford-college/index.html.

-9-

residence hall is a five-minute walk to anywhere you need to go—the library, the

dining hall, the gym, and your classrooms."[9]

24.    Nevertheless, "[e]ven though students at Emory College and Oxford

College live on different campuses, our diverse, involved community is one—a

dynamic home of resources, inspiration, and friends to help you explore your

passions and make a difference in the world. You'll join our community for four

years and a lifetime, and wonder what you ever did without it."[10]

25.    To obtain such educational opportunities and activities, Plaintiff and

the Class Members pay, in whole or in part, significant tuition, fees, and/or room

and board.

26.    For the Spring term 2020, Defendant assessed the following: $26,535

in tuition, which specifically "includes full-time instruction in an average program

of study, use of facilities and equipment, medical and health service, and library

service."[11] Furthermore, room and board average $4,319 for room and $3,167 for

---

[9] *Id.*

[10] https://apply.emory.edu/community/index.html.

[11] http://oxford.emory.edu/catalog/admission-and-aid/cost-of-attendance.html.

board per semester.[12] Defendant also assesses another $367 per semester in fees for fixed athletic, activity, and mental health fees.[13]

27.    Such charges for study are significantly higher than online only programs.

28.    Schools delivering an online-only educational experience assess significantly discounted rates for delivering such educational services. For example, Western Governor's University charges flat-rate tuition at $3,370 per term while Southern New Hampshire University charges $960 per course for online undergraduate programs and $1,881 per course for online graduate programs.

**B.    The Novel Coronavirus Shutdowns and Defendant's Campus Closure**

29.    On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or COVID-19.

---

[12] *Id.*

[13] http://studentfinancials.emory.edu/cost-attendance.aspx.

30.     By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

31.     Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

32.     By March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

33.     Travel and assembly restrictions began domestically in the United States on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders and as of April 6, 2020, 297 million people in at least 38 states, 48 counties, 14 cities, the District of Columbia, and Puerto Rico were being urged or directed to stay home. The shelter-in-place executive order applicable to Georgia went into effect on April 3, 2020 and extended to April 30, 2020.[14]

---

[14] https://www.emory.edu/coronavirus/emory/faq/index.html.

34.     On or about March 11, 2020, Defendant extended spring break, with the intent to transition to remote learning on March 23, 2020.[15] At the same time, Defendant directed "[a]ll students residing in Emory residential facilities should collect belongings and move out of their spaces between now and Sunday, March 22 at 5:00 p.m."[16] Defendant also recommended cancelling all non-essential gatherings and events.[17]

35.     On or about March 23, 2020, Defendant closed all campus buildings (except for housing locations where certain students were allowed to remain), migrating all or substantially all classes online and asked all students not to return to campus for the remainder of the semester.[18]

36.     Though the reasons for such closures are justified, the fact remains that such closures and cancellations present significant loss to Plaintiff and the Class Members.

37.     College students across the country have offered apt descriptions of the loss they have experienced as a result of the pandemic, highlighting the

---

[15] https://news.emory.edu/stories/2020/03/coronavirus_remote_learning/campus.html.

[16] *Id.*

[17] *Id.*

[18] https://www.emory.edu/coronavirus/emory/faq/index.html.

disparity between students' bargained for educational experience and the experience that colleges and universities, including Defendant, now provide.

38.    For example, as reported in The Washington Post, one student "wonders why he and others . . . are not getting at least a partial tuition refund. Their education, as this school year ends in the shadow of a deadly pandemic, is nothing like the immersive academic and social experience students imagined when they enrolled. But tuition remains the same: $27,675 per semester . . . 'Our faculty are doing a good job of working with us,' said Patel, 22, who is from New Jersey. 'But at the end of the day, it's not the same as in-person learning . . . It shouldn't just be a part of the business model where, no matter what happens, you have to pay the same amount. The cost needs to reflect some of the realities.'"[19]

39.    As another example, as reflected in a Change.org petition, with nearly 5,000 supporters, students at another major university highlight the loss experienced by students: "As a result of the COVID-19 global pandemic crisis, Governor Pritzker has declared a state of emergency in Illinois. In response, Northwestern University made the sensible decision to offer all Spring 2020 courses online for the start of the quarter and will likely extend this to the rest of

---

[19] https://www.washingtonpost.com/education/2020/04/16/college-students-are-rebelling-against-full-tuition-after-classes-move-online/.

the quarter as the situation worsens. While this is certainly the right call to ensure the health and safety of all students, Northwestern's tuition and fees do not accurately reflect the value lost by switching to online education for potentially an entire term. For the following reasons, we are seeking a partial refund of tuition and full refund of room and board for the Spring 2020 quarter. Since Northwestern is a top private university, the estimated annual cost of attendance of $78,654 goes towards a comprehensive academic experience that cannot be fully replicated online. Due to the COVID-19 crisis, students paying for the Northwestern experience will no longer have access to invaluable face-to-face interaction with faculty, resources necessary for specific programs, and access to facilities that enable learning."[20]

40.    Another university's student newspaper reflects another example: "At this time, most of the campus and dorms need not be rigorously maintained. No events will be held, nor speakers hosted. The world-class education that consists in having opportunities to work and interact with academics and peers (not to

---

[20] https://www.change.org/p/northwestern-university-tuition-fees-reduction-for-spring-2020.

mention the vast numbers of innovators, creators, doctors, organizers, and more

that congregate on our campus) will no longer be provided."[21]

41.    The same notions apply to Defendant's students as well. As reflected

in a Change.org petition:

> As students of Emory University are well aware, classes
> have been switched to online learning for the remainder
> of the Spring 2020 semester. We students did not agree to
> attend online school, nor did we agree to pay the high
> cost of tuition for online classes, especially since online
> classes are usually much cheaper than in-person classes.
> Due to the lower rigor and increased barriers of online
> learning, Emory University should give students a partial
> refund for this semester's tuition.
>
> The lower rigor of Emory's classes is evident in the
> institution's recent decision to allow classes to be
> pass/fail. Of course, it i[s] still an option whether to
> receive a letter grade or a pass/fail grade, but Emory
> administrators would have never allowed classes to be
> pass/fail if they did not recognize the lower rigor and
> increased difficulties associated with online learning.
>
> The lower rigor of classes is also proven in the way in
> which many professors have changed their syllabi; many
> of these changes include no labs for science, less
> coursework, open-book tests, non-interactive lectures,
> less office hour time, and many more. We should not be
> paying the same tuition for less resources and less
> expectations.

---

[21] https://www.chicagomaroon.com/article/2020/3/19/uchicago-lower-tuition-spring-2020/.

> According to the Emory Wheel, Emory University's
> endowment increased by over $500 million last year,
> giving the school a total endowment of nearly $7.9
> billion. Obviously, Emory can afford a partial refund. If
> Emory is the leader in social justice that it claims to be,
> then it should immediately give students a partial refund
> for this semester's tuition, in accordance with long-
> standing differences between in-person and online prices
> for classes.[22]

42.    Similarly, as noted in an article published in The Emory Wheel

student newspaper, "[e]ver since Emory announced on March 11 that it would shift

to remote learning and suspend on-campus activities, the University's teaching

situation has been varied and unequal."[23]

43.    As another article explained the changes with Defendant's shift to

online-only learning:

> I've received dozens of emails about how we are a
> community and can get through this trying time together.
> These emails state that financial resources exist for those
> in need (which, in fairness, have benefited many
> students) and that faculty are working to make this
> transition as smooth as possible.
>
> What I haven't seen, however, is a focus on academics.
> The student body is used to in-person learning; most of
> us have studied in lecture halls, classrooms and libraries

---

[22] https://www.change.org/p/emory-university-give-students-of-emory-university-a-partial-refund-on-their-tuition-for-spring-2020.

[23] https://emorywheel.com/professors-students-need-compassion-during-the-pandemic/

since first grade — not our bedrooms for hours each
day….And for some students, their professors have
canceled live lectures entirely and have opted to give
more homework, forcing students to teach themselves
material they do not know.

\*\*\*

We all knew the transition to remote learning would be
difficult; however, the intelligent and resilient students
that make up Emory do not have the necessary built-in
skills to seamlessly adjust to what was thrown upon us in
a week. It is insensitive to keep syllabi the same and
barely change our grading system. We cannot study like
we used to. We cannot have peace of mind when
knowing that our parents may no longer be working. We
cannot meet up with friends to study for class. We cannot
wake up at the same time as we did previously. And we
cannot achieve the same mastery of class material if we
must teach it to ourselves.[24]

44.    Indeed, Defendant itself acknowledges the "significant changes" faced

by students, faculty, and staff, "including an abrupt transition to online education,"

one which forced Class Members "to adjust to a new way of learning in a very

different environment."[25]

---

[24] https://emorywheel.com/emory-needs-to-do-more-for-its-students-academic-anxiety/

[25]
https://www.emory.edu/coronavirus/emory/messages/index.html?m=message-all-strong-finish-april-29.

**C.    Defendant's Refusal to Issue Refunds for Tuition or Instructional Fees**

45.    Given Defendant's transition to online classes and COVID-19 concerns, Defendant asked students to vacate student housing.

46.    And while Defendant has not forced students to leave student housing, Defendant has explicitly encouraged students to consider moving out of student housing to a family residence or living environment that minimizes contact with others. Many students have followed the Defendant's instructions and moved off campus. When students follow the Defendant's instructions, they are no longer receiving room and board services. Likewise, when student services are curtailed or eliminated, students should not be forced to pay for services they cannot use.

47.    Defendant, however, is refusing to give full prorated refunds for room and board when a student leaves campus at the university's instruction.

48.    Defendant has agreed to prorate some fees and costs, but not equal to the number of days the student has paid room and board for the remaining Spring term.

49.    Defendant has also refused to give a prorated refund for fees paid for student services students cannot use because those services were curtailed, eliminated, or because the student followed the university's instruction to leave the campus and return home.

-19-

50.     While Emory has agreed to refund student accounts with a calculated amount of unused housing, dining, athletic fees, activity fees, parking fees, and other fees unrelated to academic instruction, it has refused to provide students with any reimbursement or refunds for instructional costs (tuition, technology fees, etc.) or other services that purportedly remain available to students, such as health related fees.

51.     For the handful of required fees subject to a refund, Emory calculated the refunds based on a required move-out date of March 22, even though students were asked to (and did) leave Emory prior to that date. But students, including Plaintiff left campus prior to that date, e.g., in Plaintiff's experience March 17, 2020.

52.     Emory has refused to give tuition refunds with the shift to remote learning, declaring as follows: "Although the delivery channel has changed for the remainder of the Spring 2020 semester, the quality of the Emory teaching experience has not. Emory University has been offering personalized online experiences specifically designed for a liberal arts environment, just on a smaller scale."

53.     However, such justifications directly contradict the experience of Plaintiff and the Class Members.

54.     Defendant does so despite recognizing the losses suffered by students. As Dean Michael A. Elliot explained the shift to remote learning for the rest of the semester: "It is not an easy shift, nor will the next period of time be easy, but the Emory community, including our alumni and friends, will help see us through. Our students are challenged as they return home to maintain their focus, to retain their friendships, to grieve their loss of anticipated experiences, and to see a future beyond the current moment."[26]

## V.     CLASS ACTION ALLEGATIONS

55.     Pursuant to N.D. Ga. LR 23.1(A)(2)(a) and (b), Plaintiff sues under Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and a Class defined as follows:

> All persons enrolled at Defendant for the Spring 2020 term who paid Defendant, in whole or in part, tuition, fees, and/or room and board for in-person instruction and use of campus facilities, but were denied use of and/or access to in-person instruction and/or campus facilities by Defendant.

Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, predecessors, successors, assigns, and employees. Further excluded from the Class is this Court

---

[26] https://www.emory.edu/coronavirus/emory/messages/index.html?m=message-college-dean-update-march-27.

and its employees. Plaintiff reserves the right to modify or amend the Class definition including through the creation of sub-classes if necessary, as appropriate, during this litigation.

56.     The definition of the Class is unambiguous. Plaintiff is a member of the Class she seeks to represent. Class Members can be notified of the class action through contact information and/or address lists maintained in the usual course of business by Defendant.

57.     Per Rule 23(a)(1), Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. Under N.D. Ga. LR 23.1(A)(2)(b), the precise number of Class members is unknown to Plaintiff but may be ascertained from Defendant's records. However, given the thousands of students enrolled at Defendant in a given year, that number greatly exceeds the number that would make joinder possible and exceeds the number required for jurisdiction under 28 U.S.C. § 1332(d)(2) and (d)(5)(B). Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

58.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2).

59.     Consistent with Rule 23(a)(2), Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical legal violations are involved. Individual questions pale by comparison to the numerous common questions that predominate. The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts—Defendant's campus closure and student evictions, its complete transition to online classes, and Defendant's refusal to fully refund tuition, fees, and/or room and board.

60.     Under N.D. Ga. LR 23.1(A)(2)(d), Plaintiff shows that common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and Rule 23(b)(3). Some of the common legal and factual questions include:

   a.     Whether Defendant engaged in the conduct alleged;

   b.     Whether Defendant has a policy and/or procedure of denying refunds, in whole or in part, to Plaintiff and the Class Members;

c.   Whether Defendant breached identical contracts with Plaintiff and the Class Members;

d.   Whether Defendant violated the common law of unjust enrichment;

e.   Whether Defendant converted funds of Plaintiff and the Class Members that should have been refunded; and

f.   The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class Members.

61.   The Class Members have been damaged by Defendant through its practice of denying refunds to Class Members.

62.   Plaintiff's claims are typical of the claims of the other Class Members under Rule 23(a)(3). Plaintiff is a student enrolled at Defendant in the Spring 2020 term. Like other Class Members, Plaintiff was instructed to leave Defendant's campus, forced to take online classes, and has been completely or partially denied a refund for tuition, fees, and/or room and board.

63.   Under N.D. Ga. LR 23.1(A)(2)(c), Plaintiff shows that Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiff is familiar with the basic facts that form the bases of the Class Members' claims. Plaintiff's interests do not conflict with the

interests of the other Class Members she seeks to represent. Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class Members.

64.     Consistent with N.D. Ga. LR 23.1(A)(2)(e) and Rule 23(b)(3), the class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members. The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

65.     In addition, under Rule 23(b)(3)(A), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

66.     The Northern District of Georgia is also a desirable forum under Rule 23(b)(3)(C) to concentrate the litigation of the claims of Plaintiff and the Class Members given that Defendant is located within this judicial district, made pertinent decisions within this District, and information and relevant documents are expected to exist within this District.

67.     Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties per Rule 23(b)(3)(D).

68.     Pursuant to N.D. Ga. LR 23.1(A)(2)(f), Plaintiff alleges that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6) due to the thousands of students enrolled at Defendant, the cost of Defendant's tuition and fees, and the time period at issue in this lawsuit.

## VI.   CAUSES OF ACTION

## COUNT I

## BREACH OF CONTRACT

69.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

70.     Plaintiff and the Class Members entered into identical, binding contracts with Defendant.

71.     Under their contracts with Defendant, Plaintiff and the members of the Class paid Defendant tuition, fees, and/or room and board charges for Defendant to provide in-person instruction, access to Defendant's facilities, and/or housing services.

72.     Plaintiff and the Class Members have fulfilled all expectations, having paid Defendant for all Spring 2020 term financial assessments.

73.     However, Defendant has breached such contracts, failed to provide those services, and/or has not otherwise performed as required by the contract between Plaintiff and the Class Members and Defendant. Defendant has moved all classes to online classes, has restricted or eliminated Plaintiff and the Class Members' ability to access university facilities, and/or has evicted Plaintiff and the Class Members from campus housing. In doing so, Defendant has, and continues to, deprive Plaintiff and the Class Members from the benefit of their bargains with Defendant.

74.     Plaintiff and the Class Members have been damaged as a direct and proximate result of Defendant's breach.

75.     Plaintiff and members of the Class are entitled to damages, including but not limited to tuition refunds, fee refunds, and/or room and board refunds.

## COUNT II

## UNJUST ENRICHMENT

76.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

77.     At all times relevant hereto, Plaintiff and the Class Members directly conferred non-gratuitous benefits on Defendant, i.e., monetary payments for tuition, fees, and/or room and board, so that Plaintiff and the Class Members could avail themselves of in-person educational opportunities and utilize campus facilities, including campus dormitories.

78.     Defendant knowingly accepted the benefits conferred upon it by Plaintiff and the Class Members.

79.     Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

80.     Defendant accepted or retained the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class, with full knowledge and awareness that because of Defendant's unjust and inequitable actions, Plaintiff and members of the Class are entitled to refunds for tuition, fees, and/or room and board.

81.     Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

82.     Because Defendant's retention of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to, and seek disgorgement and restitution of, the benefits unjustly retained whether in whole or in part, including through refunds for tuition, fees, and/or room and board.

## COUNT III

## MONEY HAD AND RECEIVED

83.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

84.     Plaintiff and the other members of the Class have an undisputed right to receive educational services, activities, and access Defendant's facilities for the Spring 2020 term. Plaintiff and the Class Members obtained such rights by paying Defendant tuition, fees, and/or room and board and by otherwise remaining in good standing with Defendant.

85.     Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by effectively

closing its campus to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing. All the while, Defendant has unlawfully retained the monies Plaintiff and the Class Members paid Defendant as well as barred Plaintiff from Defendant's facilities.

86.     Defendant deprived Plaintiff and the other Class Members of the rights and benefits for which they paid Defendant tuition, fees, and/or room and board.

87.     Plaintiff and/or Class Members have requested and/or demanded that Defendant issue refunds.

88.     Defendant's interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and members of the Class, in that they paid for rights, benefits, services, and/or facility access, but Defendant has deprived Plaintiff and members of the Class of their rights, benefits, services, and/or facility access.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and Class Members request that the Court enter an order or judgment against Defendant including:

A.     Certification of the action as a class action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and her counsel of record as Class Counsel;

B.     Damages in the amount of unrefunded tuition, fees, and/or room and board;

C.     Actual damages and all such other relief as provided under the law;

D.     Pre-judgment and post-judgment interest on such monetary relief;

E.     Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for tuition, fees, and/or room and board;

F.     The costs of bringing this suit, including reasonable attorney's fees; and

G.     All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Plaintiff demands trial by jury on her own behalf and on behalf of Class Members.

Dated: May 8, 2020           Respectfully submitted,

By:    */s/ E. Adam Webb*
          E. Adam Webb, Esq.
           Georgia Bar No. 743910
          G. Franklin Lemond, Jr.
           Georgia Bar No. 141315
          WEBB, KLASE & LEMOND, LLC
          1900 The Exchange, S.E., Suite 480
          Atlanta, Georgia 30339
          (770) 444-0773
          Adam@WebbLLC.com
          Franklin@WebbLLC.com

          Steve W. Berman (*Pro Hac Vice*
          Forthcoming)
          HAGENS BERMAN SOBOL SHAPIRO LLP
          1301 Second Avenue, Suite 2000
          Seattle, WA 98101
          (206) 623-7292
          steve@hbsslaw.com

          Daniel J. Kurowski (*Pro Hac Vice*
          Forthcoming)
          Whitney K. Siehl (*Pro Hac Vice*
          Forthcoming)
          HAGENS BERMAN SOBOL SHAPIRO LLP
          455 N. Cityfront Plaza Dr., Suite 2410
          Chicago, IL 60611
          (708) 628-4949
          dank@hbsslaw.com
          whitneys@hbsslaw.com

          -with-

-32-

Andrew S. Levetown
IVEY & LEVETOWN, LLP
6411 Ivy Lane, Suite 304
Greenbelt, MD 20770
(703) 618-2264
asl@iveylevetown.com

*Attorneys for Plaintiff, individually and on behalf of all others similarly situated*