IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARC SCHULTZ, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

EMORY UNIVERSITY,

Defendant.

CIVIL ACTION FILE
NO. 1:20-CV-2002-TWT

## OPINION AND ORDER

This is a putative breach of contract class action. It is before the Court on the Plaintiff's Motion for Class Certification [Doc. 77]. For the reasons set forth below, the Plaintiff's Motion for Class Certification [Doc. 77] is GRANTED in part and DENIED in part.

## I.   Background

The case arises from the closure of the Defendant Emory University's campus upon the arrival of the COVID-19 pandemic in March 2020. The Plaintiff Marc Schultz is the father of an Emory student who was enrolled in classes in both the Spring and Fall 2020 semesters. (First Am. Compl. ¶ 12). Schultz brings this suit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), on behalf of himself and others similarly situated seeking redress for his allegedly lost benefit of the bargain. (First Am. Compl. ¶¶ 9–10). While Emory refunded "student accounts with a calculated amount of unused housing, dining, athletic fees, activity fees, parking fees, and other fees

unrelated to academic instruction," the university did not refund tuition in the spring or prorate costs for lost services in the fall. (*Id.* ¶¶ 89–94). In Schultz's view, "while Plaintiff and Class members paid for students' in-person access to renowned faculty as essential to the Emory experience, Defendant excluded students from such access for the Spring 2020 and Fall 2020 semesters." (*Id.* ¶ 18). In his First Amended Complaint, Schultz brings claims of (1) breach of implied contract and (2) money had and received. (*Id.* ¶¶ 109–123). He now moves to certify his proposed class under Federal Rule 23.

## II.   Legal Standard

Federal Rule of Civil Procedure 23(c)(1)(A) provides that a court must "[a]t an early practicable time after a person sues or is sued as a class representative . . . determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). There are four prerequisites to class certification as outlined in Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition, before a district court considers whether a class satisfies the Rule 23(a) prerequisites, the class representative must show that the proposed class is "adequately defined and clearly ascertainable." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021)

2

(citation omitted). Finally, the proposed class must also satisfy at least one of the alternative requirements in Rule 23(b), which for purposes of this case are found in subsection (b)(3). *See Herrera v. JFK Med. Ctr. L.P.*, 648 F. App'x 930, 933 (11th Cir. 2016). Subsection (b)(3) applies when "[1] the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and . . . [2] a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).

The party seeking class certification bears the burden of proving that these requirements are satisfied. *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1187 (11th Cir. 2003). The decision to grant or deny class certification lies within the sound discretion of the district court. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1386 (11th Cir. 1998) (en banc). When considering the propriety of class certification, the court should not conduct a detailed evaluation of the merits of the suit. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974). Nevertheless, the court must perform a "rigorous analysis" of the particular facts and arguments asserted in support of class certification. *Falcon*, 457 U.S. at 161; *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir. 1984). Frequently, that "rigorous analysis" will entail some overlap with the merits of the

plaintiff's underlying claim. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351–52 (2011).

### III.   Discussion

Schultz now moves to certify a class consisting of the following proposed class members:

> All people paying [Emory], in whole or in part, personally and/or on behalf of others, for tuition, fees, and/or room board for in-person instruction and use of campus facilities, but who were denied use of and/or access to in-person instruction and/or campus facilities by [Emory] for the spring 2020 academic term.

(Br. in Supp. of Pl.'s Mot. for Class Cert., at 8). He contends that the class is both adequately defined and clearly ascertainable and that it meets the four Rule 23(a) certification prerequisites and the 23(b) predominance and superiority requirements. (*Id.* at 8–21). In response, Emory argues that class certification is improper because (1) Schultz's proposed class is not ascertainable, (2) he is an inadequate class representative, (3) his claims are not typical of the putative class, (4) common issues do not predominate over his implied contract or money-had-and-received claims, and (5) he has not established a classwide damages model. (Def.'s Resp. Br. in Opp'n to Pl.'s Mot. for Class Cert., at ii). The Court considers the ascertainability requirement, the Rule 23(a) prerequisites, and the Rule 23(b) predominance and superiority requirements in turn.

## A. Ascertainability

Schultz argues that his proposed class is clearly ascertainable because Emory's registration and payment records establish proof of individuals who paid tuition and fees for in-person education during the Spring 2020 term that students did not receive in full. (Br. in Supp. of Pl's. Mot. for Class Cert., at 20–21). Emory contends, in response, that there is no administratively feasible way to identify "all people" who paid tuition on behalf of Emory students in the spring of 2020 and therefore that identifying class members would require individualized inquiries into all payments made on behalf of each Emory student. (Def.'s Resp. Br. in Opp'n to Pl.'s Mot. for Class Cert., at 14–17).

The Eleventh Circuit has traditionally "collapsed class definition and ascertainability into one inquiry. A class is inadequately defined if it is defined through vague or subjective criteria. And without an adequate definition for a proposed class, a district court will be unable to ascertain who belongs in it." *Cherry*, 986 F.3d at 1302 (citations omitted). Administrative feasibility, however, is not a precondition for certification because neither Eleventh Circuit precedent nor the text of Rule 23(a) necessarily require its proof. *Id.* at 1302–04 (concluding that administrative feasibility may be considered "as part of the manageability criterion of Rule 23(b)(3)(D)" but that such a consideration is not required for certification under Rule 23).

Emory relies on *Evans v. Brigham Young Univ.*, 2022 WL 596862 (D. Utah Feb. 28, 2022), *aff'd* 2023 WL 3262012 (10th Cir. 2023), and *Garcia de*

5

*León v. New York Univ.*, 2022 WL 2237452 (S.D.N.Y. June 22, 2022), in support of its position that Schultz's proposed class is not ascertainable because no administratively feasible way exists to determine the members of the class. (Def.'s Resp. Br. in Opp'n to Pl.'s Mot. for Class Cert., at 16–17). In reply, Schultz contends that Emory's reliance on *Evans* and *Garcia de León* ignores the distinction between ascertainability and administrative feasibility that the Eleventh Circuit established in *Cherry*. The Court agrees with Schultz on this point: the question here is not whether Schultz's proposed class is "capable of convenient determination" but rather merely capable of determination period. *Cherry*, 986 F.3d at 1303.

   With the applicability of the more lenient ascertainability standard in the Eleventh Circuit under *Cherry*, the Court concludes that Schultz's proposed class is adequately defined to support a finding of ascertainability. Though the evidence submitted by the parties here undoubtedly suggests that the proposed class members are not capable of *convenient* determination, the Court cannot conclude that the proposed class members are outright incapable of determination. Emory contends that its records cannot "identify *who* made payments on behalf of students," which it claims precludes identification of "[a]ll people paying [Emory] . . . on behalf of others" under the proposed class definition. (Def.'s Resp. Br. in Opp'n to Pl.'s Mot. for Class Cert., at 15). In his reply brief, Schultz challenges this conclusion, asserting that the evidence does not suggest that Emory cannot direct refunds to the true payor through its

6

student information system. (Reply Br. in Supp. of Pl's. Mot. for Class Cert., at

3). The nuances of Emory's payment system are as follows:

> For any portion of tuition and fees not covered by financial
> aid, Emory receives payments through various means, including
> online ACH payments, payments through third-party services,
> wire transfers, and, to a much lesser extent, checks. To make an
> online payment, which accounts for the majority of such
> payments, a student can login to his or her OPUS account (the
> Emory student portal) and follow the required prompts to submit
> payment information. Students may also create "guest"
> credentials for up to five individuals, who can then submit
> payments on the student's behalf.
> The only information retained concerning a guest account,
> however, is the username. The guest account is not linked to an
> email address or any other identifying information. And OPUS
> does not identify who made a particular payment. Similarly,
> Emory's bank records do not identify where each payment for
> tuition and fees originated. In fact, for ACH payments, Emory's
> bank records aggregate payments into larger batched deposits,
> which contain no identifying information about any individual
> payor (nor link those payments to particular students).

(Def.'s Resp. Br. in Opp'n to Pl.'s Mot. for Class Cert., at 9–10 (citations

omitted)). The transactions on Maya Schultz's OPUS account substantiate the

details of the payment system outlined by Emory above. (*See* Doc. 78-3, at 2–

3). The payments on her account for her Spring 2020 semester appear to have

been made by a user with the name of "MOMPOP," presumably the Plaintiff

Schultz. (*Id.* at 3).

Schultz takes issue with Emory's position, noting that "[i]n general,

courts do not look favorably on the argument that records a defendant treats

as accurate for business purposes are not accurate enough to define a class."

(Reply Br. in Supp. of Pl's. Mot. for Class Cert., at 3 n.1 (quoting *Soutter v.*

7

*Equifax Info. Servs., LLC*, 307 F.R.D. 183, 197–98 (E.D. Va. 2015))). The Court notes here Emory has already provided partial fees refunds to students through their OPUS accounts following the transition to online learning in 2020. (*See, e.g.*, Doc. 78-3, at 3). And though the Emory records do not specifically identity the individual people paying Emory tuition and fees on behalf of others in OPUS, such individuals are surely capable of determination, albeit inconveniently. Ascertaining the identities of class members will presumably require individual inquiries into every 'MOMPOP' and other less indicative OPUS usernames to determine the class membership. But such an endeavor does not make the class inherently incapable of determination. Accordingly, Schultz's proposed class definition is ascertainable.

*Evans* and *Garcia de León* do not directly contradict the Court's conclusion here. The plaintiff in *Evans* sought certification of a class of "[a]ll persons who paid tuition and/or Mandatory Fees to attend in-person class(es) during the Winter 2020 term" at BYU. *Evans*, 2022 WL 596862, at *2. Applying both the administrative feasibility standard and the ascertainability standard adopted by the Eleventh Circuit in *Cherry*, the court in *Evans* concluded that the plaintiff failed to show ascertainability, in part, because BYU's records did "not reflect whether the student or a third party paid the tuition." *Id.* at *3, n.45 (citing *Cherry*, 986 F.3d at 1304); *see also Evans*, 2023 WL 3262012, at *8 (affirming the district court's denial of class certification, reasoning that the record supported the district court's finding "that BYU's records did not

8

differentiate between a student or third party paying the tuition"). Similarly, the court in *Garcia de León* considered that NYU could not "readily ascertain *who* paid which fees and in what amounts . . . because students often look[ed] to family members, and even in some cases to employers, to pay money due to NYU on their behalf." *Garcia de León*, 2022 WL 2237452, at *4.

In the present case, however, Emory's OPUS records have an indicator for who paid the students' tuition and fees and in what amounts. (*See e.g.*, Doc. 78-3, at 2–3). True, the proposed class definition would certainly be more clearly ascertainable if it mirrored the class certified in *Arredondo v. University of La Verne*, 341 F.R.D. 47, 50–51 (C.D. Cal.), *class decertified in part*, 618 F. Supp. 3d 937 (C.D. Cal. 2022), where the court construed a proposed class of "all persons who paid tuition" to mean all undergraduate students who paid tuition. But here, Schultz has proposed no such class, and for good reason—he would not qualify as a class member under such a definition. Nonetheless, his proposed class need not be perfectly defined or conveniently crafted to support a finding of ascertainability. Here, because the proposed class is not defined through vague or subjective criteria, the Court concludes that Schultz has carried his burden to show that his proposed class is ascertainable by a preponderance of the evidence. *Thompson v. Jackson*, 2018 WL 5993867, at *2 (N.D. Ga. Nov. 15, 2018).

**B. Rule 23(a) Certification Prerequisites**

The Court now considers the four prerequisites to certification under Rule 23(a). Emory does not contest that Schultz's proposed class satisfies the numerosity prerequisite in its response brief. Thus, before the Court are the adequacy, typicality, and commonality prerequisites, which the Court addresses in turn.

**1.  Adequacy of Class Representation**

Schultz contends that he is an adequate class representative because he has no fundamental conflicts with the class members and has committed to prosecuting this case and advocating for the best interests of the class. (Br. in Supp. of Pl.'s Mot. for Class Cert., at 12–13). Emory argues that Schultz is not an adequate class representative because he "virtually ha[s] abdicated to [his] attorneys the conduct of the case" and has failed to comply with discovery obligations. (Def.'s Resp. Br. in Opp'n to Pl.'s Mot. for Class Cert., at 17–20).

Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether the adequacy requirement is met, [a court asks]: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1275 (11th Cir. 2021) (quotation marks and citation omitted). Here, Emory does not contend that a substantial conflict

10

exists between Schultz and his proposed class, but Emory does argue that Schultz has failed to adequately prosecute this case.

Emory contends that Schultz has failed to show "the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." (Def.'s Resp. Br. in Opp'n to Pl.'s Mot. for Class Cert., at 17–18 (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987))). Emory relies on *Kirkpatrick* for its proposition that the putative class here is "entitled to 'more than blind reliance upon even competent counsel by uninterested and inexperienced representatives.'" (*Id.* at 18 (quoting *Kirkpatrick*, 827 F.2d at 727 (citation omitted))).

The Eleventh Circuit in *Kirkpatrick* established that, in the context of securities cases, "class certification should not be denied simply because of a perceived lack of subjective interest on the part of the named plaintiffs unless their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case." *Kirkpatrick*, 827 F.2d at 728. The Eleventh Circuit reiterated its reluctance to establish a general legal standard for application "[b]ecause the issue of adequate class representation arises in a wide variety of contexts." *Id.* at 727–28.

Emory also relies on *Danielson v. DBM, Inc.*, 2007 WL 9701055 (N.D. Ga. Mar. 15, 2007), in support of its position that Schultz is an inadequate class representative. In *Danielson*, this Court declined to certify a class of plaintiffs who sued over an allegedly fraudulent sale of wood flooring, in part, because

11

the plaintiffs did "not appear aware of the legal or factual issues of their claim," including that some plaintiffs never read the complaint at all and that some did not investigate facts related to their claims, among other reasons. *Danielson*, 2007 WL 9701055, at *1, *6.

In reply, Schultz claims that the adequacy requirement presents a low hurdle that he clearly meets. (Reply Br. in Supp. of Pl's. Mot. for Class Cert., at 5). He relies on a case where a class representative with limited English proficiency and without understanding of her legal claims was nonetheless an adequate class representative because "she understood her financial loss and secured assistance to prosecute her case." (*Id.* (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370–71 (1966))).

In the present case, the Court cannot conclude that Schultz is an inadequate class representative, despite some similarity between the facts here and the facts giving rise to the finding of inadequacy of the class representative in *Danielson*. Here, like some of the plaintiffs in *Danielson*, Schultz admitted during his deposition that he has not read the operative complaint (the First Amended Complaint). (Schultz Dep., 123:3–124:7). But such a reality is not involvement "so minimal that [he] virtually [has] abdicated to [his] attorneys the conduct of the case." *Kirkpatrick*, 827 F.2d at 728. Like the plaintiff in *Surowitz*, Schultz clearly understands the nature of the case and his claims, even if he is unaware of the specific legal theories or that the class seeks reimbursement for fees, in addition to tuition. (Schultz Dep., 51:25–

12

52:3, 134:24–135:5). That Schultz traveled to and sat for a lengthy deposition shows his commitment to adequately prosecuting this case. Under the circumstances, the Court concludes that Schultz has carried his burden to establish by a preponderance of the evidence that he will fairly and adequately protect the interests of the class.

### 2. Typicality

Schultz next argues that his claims are typical of those of the class because both claims arise from the purported implied agreement with Emory for the provision of in-person classes, facilities, and campus resources. (Br. in Supp. of Pl.'s Mot. for Class Cert., at 11–12). Emory argues, in response, that Schultz's claims are atypical because his lack of reliance on Emory's marketing materials creates a unique defense to his claims and because he, as a parent of an Emory student, was not denied use of or access to in-person instruction or facilities. (Def.'s Resp. Br. in Opp'n to Pl.'s Mot. for Class Cert., at 20–22).

The Rule 23(a) typicality prerequisite requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

> The claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). The typicality requirement may be satisfied despite substantial factual differences . . . when there is a strong similarity of legal theories.

13

*Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356–57 (11th Cir. 2009) (quotation marks and citations omitted). The test for typicality is not a demanding one; "the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1326 (N.D. Ga. 2007) (citations omitted).

The Court concludes that Schultz's claims are typical of the claims of his proposed class, and therefore, he has made the requisite showing of typicality. The Court is unpersuaded by Emory's unique defense argument because it ignores the basis of Schultz's implied contract claim, which hinges on Emory's alleged customary practice of providing in-person instruction in exchange for the payment of tuition by class members. (*See* Doc. 44 , at 14; First Am. Compl. ¶ 111). Moreover, that Schultz's class definition was imprecisely crafted does not defeat a finding of typicality. *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 551 (N.D. Ga. 2007) (noting that the district court may "alter or amend the definition of a class at any time throughout the litigation"). The Court will construe the proposed class (for now) as all people paying Emory who were personally denied, or whose beneficiaries were denied, in-person instruction and/or access to campus facilities during Spring 2020. Because Schultz, like other parents of students, paid Emory for his daughter to attend Emory, his claim is typical of the other students and parents who paid Emory

14

tuition and fees during the Spring 2020 semester. Accordingly, Schultz has met his burden to show typicality by a preponderance of the evidence.

### 3. Commonality

Schultz contends that common questions of law and fact exist in the present case because "the proof will focus on Emory's conduct and will be common to the Class." (Br. in Supp. of Pl's. Mot. for Class Cert., at 9–10). Emory argues, in response, that Schultz fails to establish common issues of law or fact, relying on its discussion and analysis of the predominance requirement of Rule 23(b)(3). (Def.'s Resp. Br. in Opp'n to Pl.'s Mot. for Class Cert., at 22).

The Rule 23(a) commonality prerequisite "requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart*, 564 U.S. at 350 (quotation marks and citation omitted). That injury "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Moreover, "[w]hat matters to class certification is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (quotation marks, alterations, and citations omitted). Finally, "even a single common question will" suffice to establish commonality. *Id.* at 359 (quotation marks, alterations, and citations omitted).

The Court concludes that Schultz has indeed cleared the low hurdle of establishing a question common to the class members' alleged injury—namely, whether Emory students should be refunded in part for the transition to online learning during the COVID-19 pandemic because of Emory's alleged breach of an implied contract or inequitable refusal to return money (partial tuition and fees) received. Accordingly, Schultz has carried his burden under Rule 23(a) of showing numerosity, adequacy of representation, typicality, and commonality by a preponderance of the evidence.

## C. 23(b)(3) Predominance and Superiority Requirements

The Court turns next to predominance and superiority. Emory does not specifically contest the superiority requirement in its response brief (other than to say it relies on its other 23(b)(3) arguments) but contends that Schultz has not met his burden of showing predominance for either of his two claims or of presenting a classwide model capable of determining damages. (Def.'s Resp. Br. in Opp'n to Pl.'s Mot. for Class Cert., at 23, n.9).

### 1. Predominance

The predominance requirement of Rule 23(b)(3) is "far more demanding" than the commonality prerequisite of Rule 23(a). *Sellers v. Rushmore Loan Mgmt. Servs., LLC*, 941 F.3d 1031, 1039 (11th Cir. 2019). The Eleventh Circuit has established the following principles regarding predominance:

> Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary

16

relief, but common issues will not predominate over individual questions if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues. Moreover, the Rule requires a pragmatic assessment of the entire action and all the issues involved. Determining which type of question predominates requires more of a qualitative than quantitative analysis.

*Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1274 (11th Cir. 2019) (quotation marks, alterations, and citations omitted). Schultz argues that common issues of law and fact predominate over individualized issues for both his implied contract and money-had-and-received claims. (Br. in Supp. of Pl's. Mot. for Class Cert., at 9–10, 14–18). Emory argues, in response, that common issues do not predominate over Schultz's claims because the claims will turn on individualized issues of whether each class member assented to Emory's marketing materials and whether individual class members made a demand for repayment. (Def.'s Resp. Br. in Opp'n to Pl.'s Mot. for Class Cert., at 23–30). The Court addresses the implied contract and money-had-and-received claims in turn.

### a. Implied Contract

In support of its position that classwide treatment is improper for Schultz's implied contract claim, Emory argues generally that courts have been reluctant to certify classes under such a theory because the nature of the claim rests on individualized representations allegedly being made to individual class members. (*Id.* at 25). Emory also takes issue with Schultz's reference to

17

its alleged "customary practice of providing in-person instruction" as the basis for his implied contract claim. (*Id.* at 26 (quoting Doc. 44, at 15)). In reply, Schultz claims that Emory "completely ignores the overwhelmingly common evidence of students' registration for in-person classes via" Emory's student information system. (Reply Br. in Supp. of Pl's. Mot. for Class Cert., at 10). Schultz argues that "the primary and predominating issue as to the formation of an implied contract for in-person education in Spring of 2020 will come from Emory's own [system] records." (*Id.* at 11).

As the Court acknowledged in its Order granting in part and denying in part Emory's motion to dismiss, "an implied-in-fact contract is one not created or evidenced by distinct and explicit language, but inferred by the law as a matter of reason and justice." *Irwin v. RBS Worldpay, Inc.*, 2010 WL 11570892, at *6 (N.D. Ga. Feb 5, 2010); (Doc. 44, at 15). And as the First Amended Complaint makes clear, Schultz does not allege that he can show the existence of the express terms of the putative implied contract; rather, he alleges that he "entered into an implied contract by accepting [Emory's] offer to register for on-campus classes and use of [Emory's] facilities in accordance with [Emory's] usual and customary practice of providing on-campus courses." (First Am. Compl. ¶ 111). Accordingly, Emory's argument that the *terms* of an implied contract cannot be shown with common evidence misses the mark. (Def.'s Resp. Br. in Opp'n to Pl.'s Mot. for Class Cert., at 24). Because implied contracts "arise from [the] nonverbal conduct of the parties," Emory's customary practice

18

of providing in-person instruction after the payment of tuition may give rise to an implied contract under Georgia law. *Davidson v. Maraj*, 609 F. App'x 994, 998–99 (11th Cir. 2015) (quotation marks and citation omitted); *J.M. Clayton Co. v. Martin*, 177 Ga. App. 228, 231 (1985) (noting that "a continued course of dealing may suggest an implied contract"); (Doc. 44, at 15). The question here, then, is whether questions of law or fact common to the putative class members' implied contract claim under Emory's customary practice theory predominate over any questions affecting only individual members.

The Court concludes that common questions predominate over any individualized questions as to the implied contract claim. Primarily, if Schultz and the putative class members entered into an implied contract with Emory based on Emory's implied offer of providing in-person classes in exchange for their payment of tuition, such an implied contract will be common to all class members (assuming they all paid tuition). And proving that class members paid tuition does not present any individualized issues not already addressed. Moreover, common issues would predominate over the breach element as well, considering that Emory failed to provide in-person classes for the entirety of the Spring 2020 semester. Proving the resultant damages required to sustain the claim for breach, however, may present individualized issues that make classwide resolution of the claims improper.

Schultz claims, in conclusory fashion, that "the calculation of damages" is common for all class members and that Emory's alleged "breach resulted in

19

the same injury for all Class members[:] they did not receive the full benefit of their bargain after the transition from in-person classes to online only education." (Br. in Supp. of Pl's. Mot. for Class Cert., at 15–16). But the Court is not so convinced. As the record makes clear, all nine Emory school units charged different tuition amounts per semester and assessed different fees to students. (Def.'s Resp. Br. in Opp'n to Pl.'s Mot. for Class Cert., at 7–8 (citing Doc. 85-21)).

Regarding the tuition charged, some Emory students presumably paid tuition to attend all in-person classes in Spring 2020, while others paid tuition to attend a mix of in-person and online classes. Would those students be entitled to the same refund amount on their tuition paid? Or would the fact that some students already planned to attend at least some online class reduce their refund amount? If their tuition refund amount was reduced, would it be reduced by a percentage proportional to the number of online credit hours in which they enrolled for the Spring 2020 semester? In addition, Schultz's daughter attended only the Emory College of Arts and Sciences, not any of the other eight Emory academic units. Are the differing academic curricula for each of the nine units, their respective unique responses to COVID-19, and their subsequent transitions to online learning in Spring 2020 sufficiently similar such that common issues will predominate over individualized ones for students of different units?

Regarding the fees assessed, whether class members sustained damages from a specific fee that they were assessed, but to which they were denied the benefit of the fee because of the pandemic, is also likely to raise individualized issues. The court in *Garcia de León* framed the issue as follows: "Figuring out which members of [the class] actually sought to avail themselves of [campus facilities] but were unable to do so is an exercise that requires making a fact-specific determination about each putative class member." *Garcia de León*, 2022 WL 2237452, at *13.

The above list of hypothetical individualized issues is, of course, non-exhaustive. And the question here, then, is whether issues common to the putative class nonetheless predominate over these individualized issues, such that certification is appropriate. The many competing interests and varying considerations here support the Court's broad discretion in resolving this class certification motion. *Klay*, 382 F.3d at 1250.

Ultimately, the Court concludes that common issues predominate over individualized ones as to the sought tuition and fees refunds. Though individualized issues abound, as evidenced by the considerations raised in the preceding paragraphs, these individualized issues all turn on questions of appropriate damages for each individual putative class member, and not on issues of the alleged existence (or breach) of an implied contract to provide in-person instruction and campus facilities in exchange for tuition payments. And as the Eleventh Circuit has made clear, "the presence of individualized

21

damages issues does not prevent a finding that the common issues [in the case] predominate." *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1178 (11th Cir. 2010) (citation omitted). Accordingly, common issues predominate over individualized ones by a preponderance of the evidence, assuming that Schultz has presented a classwide model capable of determining damages.

"Finally, predominance also requires that damages resulting from the injury be measurable on a class-wide basis through use of a 'common methodology.'" *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 696 (S.D. Fla. 2014) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 30 (2013)). Here, Schultz offers the expert report of Dr. Gareth Macartney in support of his position that damages may be calculated on a classwide basis. (*See* Macartney Report, Doc. 78-4). The report references the asserted "difference in market value between in-person and online educational offerings . . . reflected as a price premium in the tuition rates charged for an in-person experience," (*Id.* ¶ 51), but the report offers no *specific* insight into how Schultz would measure damages on a classwide basis as to the more than 100 fees across Emory's nine academic units. (*See generally id.*; *see also* Doc. 85-21). Rather, the report generically lumps the term 'fees' in with phrases like "the percentage premium in tuition and fees," without setting forth how the fees inquiry is encompassed within the two proposed economic models on variance in tuition price for in-person versus online classes. (Macartney Report, Doc. 78-4 ¶ 64). Under the circumstances,

22

the Court finds that Schultz has carried his burden to show a model capable of proving classwide damages as to *tuition* but not as to fees, room, or board.

*Garcia de León* is again instructive on this conclusion. In *Garcia de León*, the plaintiffs sued on a breach of contract theory and sought certification of a class of individuals who paid *fees* at NYU during the Spring 2020 semester, whereas the proposed class here seeks a refund of *tuition, fees, room, and board* on a breach of implied contract theory. In its predominance inquiry, the court in *Garcia de León* primarily considered "whether the amount already refunded by NYU [was] 'sufficient' to redress lack of access to the various activities and services covered by student fees." *Id.* at *18 (citation omitted). The court reasoned that "[t]o determine whether those refunds were sufficient, this court would have to review each individual fee, each individual refund, and determine whether the associated services, supplies, or equipment were provided and, if not, whether a sufficient refund was issued." *Id.* Here, the same damages considerations apply to Schultz's sought refund of fees, and he has presented no model that indicates he is capable of determining such damages on a classwide basis for his sought refunds of fees, room, and board. Therefore, common issues predominate over individualized ones for the proposed class's implied contract theory as to its tuition payments but not as to its fees, room, or board payments.

Emory argues that Schultz's expert report does not present a model capable of determining damages but rather merely references two generic

economic methods—hedonic regression and conjoint analysis—without explaining how those general methods would apply to determine damages in this case. (Def.'s Resp. Br. in Opp'n to Pl.'s Mot. for Class Cert., at 33–36). Emory's expert, Dr. Benjamin Wilner, claims that Macartney's "methodologies are so broad that [his] contention is akin to him stating that he can calculate damages because mathematics and financial statements exist." (*Id.* at 35 (citing Wilner Report, Doc. 86-3, at 19)). Without specifically addressing any of Emory's arguments or its reliance on *Randolph* or *Comcast Corp.* in its response brief, Schultz argues, in reply, that individual variation as to damages does not bar a finding of predominance and asserts that damages may be derived from the methods set forth in his expert report. (Reply Br. in Supp. of Pl.'s Mot. for Class Cert., at 11–12). Schultz does, however, attach a rebuttal report from Macartney that purports to refute Wilner's contentions. (Macartney Rebuttal, Doc. 93-1).

Schultz's failure to address Emory's damages arguments and Wilner's report, in reply, comes very close to abandonment of the issue. *See Kramer v. Gwinnett Cnty., Ga.*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004). In his rebuttal, Macartney refutes Wilner's arguments that oppose his hedonic regression and conjoint analysis models, concluding that Wilner's arguments are "unfounded and not grounded in economic theory or accepted practices." (Macartney Rebuttal, Doc. 93-1 ¶ 56). And crucially, Emory cites no authority binding on this Court that would compel a finding of a failure to show classwide

24

damages. (*See* Def.'s Resp. Br. in Opp'n to Pl.'s Mot. for Class Cert., at 33–40).

In its first notice of supplemental authority, Emory argues that the court's grant of summary judgment to the university in *Michel v. Yale Univ.*, 2023 WL 1350220 (D. Conn. Jan. 30, 2023), supports its contention here that Schultz fails to carry his burden to show a classwide model capable of determining damages. But the court in *Michel* weighed the merits of the proposed classwide damages model at the summary judgment stage, unlike the Court's inquiry here at the class certification stage. *Michel*, 2023 WL 1350220, at *7. And in its third notice of supplemental authority, Emory argues that the denial of class certification in *Omori v. Brandeis Univ.*, 2023 WL 3511341 (D. Mass. May 17, 2023), also supports its contention that Schultz fails to carry his burden to show a classwide model capable of determining damages. (Doc. 97, at 2). But the court in *Omori* was not faced with damages models proposing hedonic regression or conjoint analysis. *Omori*, 2023 WL 3511341, at *3–6. Accordingly, Schultz "presents an articulable theory of damages that is capable of classwide resolution. For the period class members took online classes in lieu of in-person classes, damages are the difference between what each class member paid and the market value of the education they received." *Arredondo*, 341 F.R.D. at 53.[1]

---

[1]  Contrary to Emory's indication, this conclusion does not contradict the Court's finding in its Order granting in part Emory's Motion to Dismiss, where the Court stated that it would not evaluate "whether [Emory's] pandemic response resulted in a poorer educational experience than [students]

### b.  Money Had and Received

The Court next considers whether common issues predominate over Schultz's money-had-and-received claim. In support of its position that classwide treatment is improper for the claim, Emory argues generally that courts have declined to certify classes under similar equitable theories of relief because resolution of the claims often turns on individualized facts. (Def.'s Resp. Br. in Opp'n to Pl.'s Mot. for Class Cert., at 30–31). Emory also argues that Schultz cannot establish demand for repayment on a classwide basis, which precludes a finding of predominance. (*Id.* at 31). In reply, Schultz claims that courts within this circuit have certified classes on unjust enrichment claims and that a petition for a partial tuition refund circulated in the spring of 2020 could aid the Court in assessing whether class members made a demand for repayment. (Reply Br. in Supp. of Pl.'s Mot. for Class Cert., at 12–16).

To sustain a claim for money had and received, a plaintiff must show "[1] a person has received money of the other that in equity and good conscience he should not be permitted to keep; [2] demand for repayment has been made; [3] and the demand was refused." *Wilson v. Wernowsky*, 355 Ga. App. 834, 843 (2020) (citation omitted). The Court agrees with Emory that individualized

---

anticipated." (Def.'s Resp. Br. in Opp'n to Pl.'s Mot. for Class Cert., at 36; Doc. 44, at 10). Rather, this conclusion supports that any damages recoverable by Schultz and the proposed class members will be premised upon "the alleged breach of a promise for in-person education" by Emory. (Doc. 44, at 10).

issues over whether class members made a demand for repayment will preclude a finding of predominance on Schultz's money-had-and-received claim. Even if this Court determined that Emory inequitably retained certain tuition and fees in transitioning to online learning after the COVID-19 pandemic, such a finding would not predominate over the massive inquiry required to determine whether each individual class member made a sufficient demand of repayment from Emory for both their tuition and fees. The inquiry for the claim here is distinguishable from the class's implied contract claim because the individualized issue is not one of damages but rather one of the essential elements (a demand for repayment) of the proving the claim. Further, Schultz's proffered petition for a partial tuition refund on Spring 2020 tuition with 57 signatures does nothing to change this calculus. (Reply Br. in Supp. of Pl's. Mot. for Class Cert., at 15). Accordingly, even though the money-had-and-received claim is "liberal in form and greatly favored by the courts," *Okeechobee Cnty., Fla., v. Nuveen*, 145 F.2d 684, 687 n.5 (5th Cir. 1944), Schultz fails to make the requisite showing that common issues will predominate over individualized ones by a preponderance of the evidence.

### 2. Superiority

Federal Rule 23(b)(3) provides that a district court may certify a class if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Four non-exhaustive factors guide the court's inquiry on superiority:

27

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*Id.* "In many respects, the predominance analysis . . . has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Klay*, 382 F.3d at 1269. Schultz contends that all four factors support a finding of superiority in this case. (Br. in Supp. of Pl's. Mot. for Class Cert., at 18–20). Emory does not specifically contest the superiority requirement in its response brief, other than to say it relies on its other Rule 23(b)(3) arguments. (Def.'s Resp. Br. in Opp'n to Pl.'s Mot. for Class Cert., at 23, n.9).

The Court agrees with Schultz that the first three factors favor a finding that a class action is the superior means of litigating the present claims. The Court has no reason to believe that the putative class members here have any particular interest in controlling their own litigation, nor is the Court aware of other class members separately pursuing the same claims in other cases. In addition, the Northern District of Georgia seems to be the most logical forum for litigating the present claims because Emory is located within the forum district. The fourth and final factor, however, merits a closer look.

28

As discussed in the ascertainability inquiry above, the administrative feasibility of managing the litigation is appropriate for discussion under the fourth factor. *Cherry*, 986 F.3d at 1304. "Administrative feasibility alone will rarely, if ever, be dispositive" of the manageability criterion under Rule 23(b)(3)(D). *Id.* at 1305 (citing *Klay*, 382 F.3d at 1272–73). The Court has serious doubts as to whether ascertaining the putative individual class members, under Schultz's proposed class definition, is a manageable endeavor. And because the proposed class here appears to present "unusually difficult manageability problems," the Court will exercise its "discretion to insist on details of the plaintiff's plan for notifying the class and managing the action." *Id.* at 1304 (citation omitted). The Plaintiff is hereby ordered to submit a detailed plan for identifying members of the class, notifying class members of the present action, and managing the case. The plan is to be submitted within 30 days of the date of this Order. The Court notes that it retains "discretion to decertify a certified class that turns out to be unmanageable." *Id.* Accordingly, the Court certifies the following class of individuals as to Schultz's implied contract claim only:

> All people paying Emory tuition, in whole or in part, and personally or on behalf of others, for in-person instruction during the Spring 2020 academic term.

The Court finds that Schultz's counsel satisfies the Rule 23(g)(1) factors and therefore appoints them as Class Counsel. (Br. in Supp. of Pl's. Mot. for Class Cert., at 21–22).

29

## IV.    Conclusion

For the reasons set forth above, the Plaintiff's Motion for Class Certification [Doc. 77] is GRANTED in part and DENIED in part. It is GRANTED as to the Court's amended class definition above for the Plaintiff's implied contract claim, and it is DENIED as to the Plaintiff's money-had-and-received claim. The Plaintiff is hereby ORDERED to submit a detailed plan for notifying class members of the present action and for managing the case within 30 days of the date of this Order.

SO ORDERED, this ____15th____ day of June, 2023.

THOMAS W. THRASH, JR.
United States District Judge

30