IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARC SCHULTZ, *individually and
on behalf of all others similarly
situated*,

    Plaintiffs,

       v.

EMORY UNIVERSITY,


    Defendant.

CIVIL ACTION FILE
NO. 1:20-CV-2002-TWT

## OPINION AND ORDER

This is a putative class action breach-of-contract action. It is before the
Court on Plaintiff Marc Schultz's Motion for Class Certification [Doc. 77]. For
the reasons set forth below, the Court dismisses this action for lack of
jurisdiction and, in the alternative, DENIES Plaintiff Schultz's Motion for
Class Certification [Doc. 77]. Defendant Emory's Motion to De-Certify the
Class [Doc. 100] is DENIED as moot.[1]

## I.    Background

This case arises from the closure of the Defendant Emory's campuses

---

[1] Because of the Eleventh Circuit's order vacating and remanding this Court's previous class
certification order, Defendant Emory University's ("Emory") motion [100] to de-certify the
class is denied as moot. However, the Court will consider arguments raised in the briefing of
that motion, as anticipated by the Eleventh Circuit. *See Schultz v. Emory Univ.*, No. 23-
12929, 2024 WL 4534428, at *6 (11th Cir. Oct. 21, 2024)("On remand, the district court may
properly consider any new materials subsequently supplemented by the pending motion to
decertify and their applicability to any of Rule 23(b)(3)'s requirements.").

upon the arrival of the COVID-19 pandemic in March 2020. Emory closed its campuses in the spring and fall semesters of 2020. (Am. Compl. ¶¶ 15–18, 88 [Doc. 48].) Plaintiff Marc Schultz is the father of a former Emory student who was enrolled full-time in classes in the spring and fall semesters of 2020. (*Id.* ¶ 12.) For those semesters, Emory refunded "student accounts with a calculated amount of unused housing, dining, athletic fees, activity fees, parking fees, and other fees unrelated to academic instruction," but it did not refund tuition and certain other fees related to lost services. (*See id.* ¶¶ 89– 94.) Schultz alleges that "while [he] and Class members paid for students' in-person access to renowned faculty as essential to the Emory experience, Defendant excluded students from such access for the Spring 2020 and Fall 2020 semesters." (*Id.* ¶ 18.) Schultz's Amended Complaint seeks relief on two claims: (1) breach of implied contract and (2) money had and received. (*Id.* ¶¶ 109–23.)

On June 15, 2023, the Court granted in part Schultz's Motion to Certify Class, but it ordered Schultz to submit a detailed plan for class notification and management. (June 15, 2023, Op. & Order, at 29–30 [Doc. 98].) In July 2023, Schultz filed the requested plan. [Doc. 99]. Emory then filed a response to that plan [Doc. 100], which this Court construed [Doc. 101] as a Motion to De-Certify the Class. In September 2023, the Eleventh Circuit granted permission [Doc. 102] for an interlocutory appeal of Schultz's Motion to Certify the Class.

The Eleventh Circuit subsequently vacated and remanded this Court's

order granting in part the Motion to Certify Class. *Schultz v. Emory Univ.*, 2024 WL 4534428, at *6 (11th Cir. Oct. 21, 2024). It found two errors in this Court's reasoning: (1) it was an error to find that the Rule 23(b)(3) predominance inquiry "*requires* that damages . . . be measurable on a classwide basis through use of a common methodology," *id.* at *5 (emphasis added), and (2) it was an error to place the burden on Emory rather than Schultz to establish whether damages are capable of classwide rather than individual determination, *id.* at *6. In light of the Eleventh Circuit's order, this Court is tasked with re-evaluating Schultz's Motion to Certify Class [Doc. 77].

Although the Motion to De-Certify Class is procedurally moot, the Eleventh Circuit noted that this Court "may properly consider any new materials subsequently supplemented by the pending motion to decertify and their applicability to any of Rule 23(b)(3)'s requirements." *Schultz*, 2024 WL 4534428, at *6. In other words, in re-evaluating Schultz's Motion to Certify Class, this Court may evaluate the arguments presented by the parties as part of their briefing on the Motion to De-Certify Class.

Most recently, in supplemental briefing regarding the effect of the Eleventh Circuit's opinion, Emory requested that this Court reconsider whether Schultz has standing to pursue his existing claims, citing a new wave of case law handed down since the Court first considered the issue of standing. (Def.'s Post-Remand Suppl. Br. at 2–3 [Doc. 127].) The Court afforded Schutlz an opportunity to respond in a reply brief, which Schultz timely filed. (*See*

3

*generally* Pl.'s Reply Br. to Def.'s Post-Remand Suppl. Br. [Doc. 130].)

## II.    Legal Standard

Federal Rule of Civil Procedure 23(c)(1)(A) provides that a court must "[a]t an early practicable time after a person sues or is sued as a class representative . . . determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A).

Courts must first determine whether a plaintiff has standing to sue. *Fox v. Ritz-Carlton Hotel Co.*, 977 F.3d 1039, 1046 (11th Cir. 2020) (quoting *Prado Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)). Article III extends the judicial power of federal courts only to "cases" and "controversies" between parties. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting U.S. Const. art. III, §§ 1–2). To ensure that federal courts adjudicate only "cases" and "controversies," a plaintiff must establish that he has standing to sue by showing:

> (1) [he] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). In a putative class action, at least one named plaintiff must have standing as to each claim asserted. *Prado*, 221 F.3d at 1279.

4

If courts determine that the named plaintiffs have standing, they may then determine whether a proposed class is "adequately defined and clearly ascertainable." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021) (quoting *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)). If the standing and ascertainability requirements are met, courts must then assess whether the class representatives have satisfied the four requirements outlined in Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Lastly, the proposed class must also satisfy at least one of the alternative requirements in Rule 23(b). *See Herrera v. JFK Med. Ctr. Ltd. P'ship*, 648 F. App'x 930, 933 (11th Cir. 2016). The Plaintiff's Motion to Certify specifically contends that Rule 23(b)(3) is satisfied. (Br. in Supp. of Pl.'s Mot. to Certify Class, at 13–20 [Doc. 78-1].) A class can be certified under Rule 23(b)(3) if "[1] the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and . . . [2] a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).

The party seeking class certification bears the burden of proving that these requirements are satisfied. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003); *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016) ("[The Plaintiff] must affirmatively demonstrate his compliance with Rule 23 by proving that the requirements are *in fact* satisfied." (quotation marks and citation omitted)). The decision to grant or deny class certification lies within the sound discretion of the district court. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1386 (11th Cir. 1998) (en banc). When considering the propriety of class certification, the court should not conduct a detailed evaluation of the merits of the suit. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974). Nevertheless, the court must perform a "rigorous analysis" of the particular facts and arguments asserted in support of class certification. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir. 1984). Frequently, that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351–52 (2011).

### III.    Discussion

#### A. Standing

Standing is a "threshold jurisdictional question" that the Court must

address before all other questions. *AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1359 (11th Cir. 2007) (quotation marks and citations omitted). In January 2021, the Court held that Schultz had standing in ruling on Emory's Motion to Dismiss. [Doc. 33.] Since then, and as described further below, many courts have held that parents seeking relief on behalf of their children do not have standing in suits against colleges and universities that closed their campuses during COVID-19. Most recently, the Second Circuit held that a parent did not have standing to pursue a breach of implied contract claim or a money-had-and-received claim. *Rynasko v. N.Y. Univ.*, 63 F.4th 186, 194–95 (2d Cir. 2023). In light of the Second Circuit's ruling and others across the country, Emory asks this Court to revisit whether Schultz has standing to pursue his claims.[2] (Def.'s Post-Remand Suppl. Br., at 2.) Emory has not filed a formal motion seeking dismissal on jurisdictional grounds, but the Court will consider the issue of standing sua sponte. *AT&T*, 494 F.3d at 1360. As the lone named plaintiff in this case, Schultz must demonstrate standing as to both his breach-of-implied-contract claim and money-had-and-received claims. The Court evaluates both below.

### 1. Breach of Implied Contract (Count I)

To establish an injury-in-fact, a plaintiff must show "an invasion of a

---

[2] The Second Circuit, like many other courts mentioned below, handed down its opinion only after full briefing had concluded on the Motion to Dismiss.

legally protected interest that is both concrete and particularized and actual and imminent, not conjectural or hypothetical." *Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, 996 (11th Cir. 2020) (quotation marks and citation omitted). In the context of a claim for breach of an express or implied-in-fact contract, that legally protected interest is the interest of the parties to the contract (or their third-party beneficiaries). *Kuchenmeister v. HealthPort Techs., LLC*, 753 F. App'x 794, 797 (11th Cir. 2018) (per curiam) (quoting *Dominic v. Eurocar Classics*, 310 Ga. App. 825 (2011)). An implied-in-fact contract, as relevant here, may arise between parties from their conduct and "course of dealing." *J.M. Clayton Co. v. Martin*, 177 Ga. App. 228, 231 (1985); *See Doss & Assocs. v. First Am. Title Ins. Co.*, 325 Ga. App. 448, 452 (2013) (citation omitted). It is "inferred" from the parties' "acts and conduct" rather than "formally or explicitly stated in words." *Dawes Mining Co. v. Callahan*, 154 Ga. App. 229, 231–32 (1980) (citation omitted). But both an implied-in-fact contract and an express contract are true contracts in that the parties have assented to their terms, with "the only difference being in the character of evidence necessary to establish [each]." [3] *Id.* at 232 (citation omitted); *Turfgrass Grp., Inc. v. Ga. Cold Storage Co.*, 346 Ga. App. 659, 665 (2018)

---

[3] An implied-in-fact contract differs from an implied-in-law contract in that the latter may be "implied by law without regard for the intent or assent of the parties." *Eaves v. J.C. Bradford & Co.*, 173 Ga. App. 470, 471 (1985). In that sense, courts have characterized implied-in-law contracts are "quasi contracts" to distinguish them from "true contracts." *Id.*

(quoting *Butts Cnty. v. Jackson Banking Co.*, 129 Ga. 801, 808 (1908)).

The Court holds that Schultz—as a parent of a student who attended Emory during COVID-19—does not have standing to bring his breach-of-implied-contract claim. In doing so, the Court joins the majority of courts who have held similarly. *See Rynasko*, 63 F.4th at 194 n.7 ("Federal courts have concluded nearly unanimously that parents of adult students lack standing to bring similar COVID-19-related lawsuits against universities, even when they paid tuition and fees." (collecting cases)); *Lindner v. Occidental Coll.*, 2020 WL 7350212, at *5 (C.D. Cal. Dec. 11, 2020) (noting that courts have "routinely" found that parents lack standing in these types of cases).

Schultz alleges that Emory did not provide its students with access to on-campus classes, facilities, and services during the spring and fall semesters of 2021 and that this failure "deprive[d] Plaintiffs and Class Members from the benefit of their bargains with Defendant." (Am. Compl. ¶ 116; *see also id.* ¶ 117 ("The online classes provided by Defendant are objectively different from, and less valuable than, the on-campus classes for which the parties entered into an implied contract."). However, Schultz does not—because he cannot—allege that *he* was denied access to Emory's in-person classes, facilities, and services. *See Rynasko*, 63 F.4th at 194. Schultz's daughter is the one who suffered the alleged injury-in-fact, and she is the only one who could have entered into a contract with Emory. *Id.*; *In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, 524 F. Supp. 3d 1346, 1354–55 (S.D. Fla. 2021) (noting that "[a]lthough

[the plaintiff parents] [ ] have a parental interest in their children's education, . . . the relationship with the university [ ] belongs to the student" and further finding that "[t]he Complaint fails to allege any legally protected contractual relationship between UM and [the parents]. [ ] [T]he Complaint fails to allege any concrete injury to [the parents].").

It does not matter that Schultz alleges that he paid for his daughter's college expenses or that he paid more than the classes were worth. *Rynasko*, 63 F.4th at 194.[4]  There is no requirement or contractual obligation for parents to pay for their children's education. As the Second Circuit explained in *Rynasko v. New York University*, a plaintiff's parent's "legally protected interest in the contract" between a student and a university

> is not different from that of a hypothetical bank who loaned [the student] the money to fund her education or a generous unrelated benefactor who gifted [the student] the funds—if the lender or donor would not have standing to sue for breach of the University's implied contract with [the student], then neither does [the plaintiff parent].

---

[4] *See also Gociman v. Loyola Univ. of Chi.*, 515 F. Supp. 861, 866 (N.D. Ill. 2021), *vacated in part on other grounds by* 41 F.4th 873 (2022) ("Once a student reaches the age of majority, courts have routinely held that parents lack standing to bring claims against their adult children's colleges and universities, even when the parents pay tuition on behalf of their children." (quoting *Lindner*, 2020 WL 7350212, at *5); *Salerno v. Fla. S. Coll.*, 468 F. Supp. 3d 1211, 1216–17 (M.D. Fla. 2020); *Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 761 (E.D. Tenn. 2009) (finding that parents lacked standing to sue on a breach of implied contract theory because "it is fairly evident that the payment of tuition does not create a contractual relationship between parents and a college' when the parents' child is over the age of majority." (quotation marks and citation omitted)); *Bergeron v. Rochester Inst. of Tech.*, 2020 WL 7486682, at *3–4 (W.D.N.Y. Dec. 18, 2020).

*Id.* at 194 (holding that a plaintiff parent did not have standing for her breach

of express and implied contract claims[5]); *see also Meissner v. Syracuse Univ.*,

2021 WL 1536676, at *3 (N.D.N.Y. Apr. 13, 2021) ("The parents are no more a

party to [the student-university] agreement because they provided the funds

for their daughter's university instruction than a bank that lent her the money

to go to school would be."). Here, Schultz's daughter is the one who owed Emory

tuition and other fees, not Schultz. Thus, "to the extent that [Schultz] believe[s]

that [he] ha[s] suffered a financial loss by paying for in-person instead of online

classes, such loss does not derive from any alleged contract with [Emory] but,

rather, from a private arrangement between [him] and [his daughter]."

*Metzner v. Quinnipiac Univ.*, 528 F. Supp. 3d 15, 37, 25 (D. Conn. 2021)

(citation omitted); *see also Salerno*, 468 F. Supp. at 1216–17 ("[T]he lack of

injury to [the parent plaintiff] is clear regardless of whether [the parent

plaintiff provided financial support to her daughter. That arrangement was

between mother and daughter. It does not establish a relationship between the

College and [the parent plaintiff] . . .").

The cases finding to the contrary cited in Schultz's reply brief are not

nearly so convincing or numerous to persuade the Court differently. In *Burt v.*

*Board of Trustees of University of Rhode Island,* 523 F. Supp. 3d 214 (D.R.I.

---

5 Two of the circuit court judges on the panel concurred in part, but neither disagreed with the finding that the plaintiff parent lacked standing on her breach of express and implied contract claims. *Rynasko*, 63 F.4th at 202 (Park, J., concurring in part); *id.* at 204 (Parker, J., concurring in part).

2021), the District of Rhode Island found that that the parent plaintiffs had standing because they "often fund their child's contractual obligations to pay tuition" and thus "st[ood] to be injured by subsequent contractual violations." *Id.* at 226–27. In *Dougherty v. Drew University*, 534 F. Supp. 3d 363 (D.N.J. 2021), the District of New Jersey found standing after first assuming that the parent plaintiff had a contractual relationship with the university, finding that to do otherwise would confuse standing with the merits of a contract claim. *Id.* at 372–73. And in *Ninivaggi v. University of Delaware*, 555 F. Supp. 3d 44 (D. Del. 2021), the District of Delaware found in a brief analysis that the parent plaintiffs suffered a "classic" financial injury in which "[t]he school wrongly took their money" after it "promised to use the money for one purpose but did not." *Id.* at 48–49. Unlike in those three cases, the Court does not find it sufficient that parents "often" pay for their children's contractual tuition payments, and the Court declines to assume or determine that there was a contractual relationship or other promise between Schultz and Emory.

Lastly, the Court notes that Schultz does not otherwise allege that his daughter was a minor at the time, that his daughter assigned her rights under the contract to him, or that he was a third-party beneficiary of the contract. In this absence, and because it is the Plaintiff's burden to establish facts sufficient to demonstrate standing, *Spokeo*, 578 U.S. at 338, the Court presumes that none of these (unlikely) circumstances are applicable. Therefore, Schultz lacks standing to sue Emory on behalf of his daughter on his breach of implied

contract claim, regardless of the fact that he paid his daughter's tuition and fees. *See Espejo v. Cornell Univ.*, 523 F. Supp. 3d 228, 236 (N.D.N.Y. 2021); *Gociman*, 515 F. Supp. at 866.

### 2. Money Had and Received (Count II)

As with his breach of implied contract claim, Schultz lacks standing to bring his money-had-and-received claim because he has failed to "allege[ ] any injury that is concrete and particularized to [*him*]." *See Meissner*, 2021 WL 1536676, at *4 (emphasis added). In Count II of his Amended Complaint, Schultz alleges that "Plaintiff and Class members have an undisputed right to receive educational services, [access] activities, and access Defendant's facilities, (Am. Compl. ¶ 119), but that "Defendant . . . interfered with the rights of Plaintiff and Class members by effectively closing its campus to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing," (*id.* ¶ 120). According to Schultz, "Defendant has unlawfully retained the monies Plaintiff and Class members paid Defendant." (*Id.* ¶ 120.) Although the money paid to Emory by Schultz's daughter came directly from Schultz—through gift, loan, or other means—that does not mean that Schultz has suffered an injury-in-fact; rather, as before, Schultz's daughter has suffered the alleged injury-in-fact because she was responsible for paying for the classes and services that Emory allegedly did not provide. *See Rynasko*, 63 F.4th at 195 (holding that the plaintiff parent lacked standing to bring her money had and received claim

13

because she alleged an injury particular to her daughter's legally protected interest but not her own); *Meissner*, 2021 WL 1536676, at \*4 (finding that the plaintiffs, as the parents of a university student, did not have standing to bring a money had and received claim since "their alleged injuries [were] all derivative of those allegedly suffered by their daughter"); *Lindner*, 2020 WL 735021, at \*6 (dismissing a student's parent for lack of standing, including on a money had and received claim). Because Schultz lacks standing as to both of his remaining claims, the Court hereby dismisses this case.

### 3. Unjust Enrichment (Previously Count III in the Initial Complaint)

In the event the Court does not find standing on his breach of implied contract claim, Schultz requests that the Court "reconsider its earlier dismissal of Plaintiff's unjust enrichment claim." (Pl.'s Reply Br. to Def.'s Post-Remand Suppl. Br., at 9.) Schultz is correct that the Court previously dismissed Schultz's unjust enrichment claim on the grounds that it was "precluded" by Schultz's allegations as to the existence of a contract between the parties. (Jan. 22, 2021, Op. & Order, at 18 [Doc. 44].) However, the Court disagrees that the unjust enrichment claim must somehow be revived now that Schutlz has no remaining contract claims. The unjust enrichment claim cannot survive for the same reasons that the implied contract and money-had-and-received claims cannot survive—Schultz has failed to allege an injury particular to him. *See Meissner*, 2021 WL 1536676, at \*4 ("[R]egardless of the claim that Plaintiffs raise in this lawsuit, they have not alleged any injury that is concrete and

particular to them. . . . The same analysis [regarding lack of standing on the contract claim] applies to the unjust enrichment claim . . .”); *Rynasko*, 63 F.4th at 195 (dismissing the parent plaintiff's claims for both unjust enrichment and breach of contract on standing grounds); *Univ. of Miami*, 524 F. Supp. 3d at 1354–55 (same); *Metzner*, 528 F. Supp. 3d at 26 (same).

## B. Class Certification

Alternatively, the Court denies the Plaintiff's Motion to Certify Class [Doc. 77]. The Court has already ruled that, without a viable classwide damages model, this case would present “complex and factually specific” damages questions that would defeat predominance, including the effects of “the differing academic curricula for each of the nine units, their respective unique responses to COVID-19, and their subsequent transitions to online learning in Spring 2020.” (June 15, 2023, Op. & Order, at 20 [Doc. 98].) The predominance inquiry does not “require[ ]” in all cases “that damages . . . be measurable on a class-wide basis through use of a common methodology,” *Schultz*, 2024 WL 4534428, at *5, but a classwide model is necessary in this case. The Court previously identified a “non-exhaustive” list of “individualized issues,” which “all turn on questions of appropriate damages for each individual putative class member,” (June 15, 2023, Op. & Order, at 21), and which would predominate over common questions unless Schultz could identify a viable classwide damages model.

Schultz has failed to meet his burden to identify a viable classwide damages model. The Court required Schulz to submit a "detailed" post-certification "plan for identifying members of the class, notifying class members of the present action, and managing the case." (*Id.* at 29.) Schultz does not know how many members his class contains, and his proposal relies on a UserID field in Emory's OPUS software that does not reliably identify payors; makes no attempt to explain how he will identify payors who paid through third-party services or wire transfers; would allow payors to self-identify; and would require individualized forensic review of payment records. (*See* Def.'s Mot. to De-Certify Class, at 7–16.) Indeed, Schultz effectively concedes that his class could not be adequately managed or ascertained by suggesting that the Court simply award any damages to non-class members—the students rather than the payors. (*See* Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to De-Certify Class, at 23 [Doc. 104-1].) For these reasons, the proposed class is unmanageable.

## IV.    Conclusion

For the reasons set forth above, the Court dismisses this case for lack of jurisdiction. Alternatively, the Court DENIES Plaintiff Schultz's Motion to Certify Class [Doc. 77]. Defendant Emory University's Motion to De-Certify Class [Doc. 100] is DENIED as moot. The Clerk is DIRECTED to close this case.

SO ORDERED, this   5th    day of May, 2025.


THOMAS W. THRASH, JR.
United States District Judge